**FILED**

JUN 28 2023

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 23 CR 4 |
| v. | Judge Shah |
| KENNETH WOODS | |

## PLEA AGREEMENT

1.      This Plea Agreement between the Acting United States Attorney for the Northern District of Illinois, MORRIS PASQUAL, and defendant KENNETH WOODS, and his attorney, JOSHUA B. ADAMS, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charge in This Case

2.      The information in this case charges defendant with wire fraud, in violation of Title 18, United States Code, Section 1343.

3.      Defendant has read the charge against him contained in the information, and that charge has been fully explained to him by his attorney.

4.      Defendant fully understands the nature and elements of the crime with which he has been charged.

### Charge to Which Defendant Is Pleading Guilty

5.      By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the information, which charges defendant with wire fraud, in violation of Title 18, United States Code, Section 1343.

## Factual Basis

6.     Defendant will plead guilty because he is in fact guilty of the charge contained in the information. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

Beginning no later than 2012, and continuing through on or about November 16, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere, KENNETH WOODS, together with Aleesha McDowell, Stacey Sims, Janelle Jordan, Lauren Coley, Shavon Johnson, and Sean Blunt, knowingly devised, intended to devise, and participated in a scheme to defraud the State of Illinois, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises; and on or about April 6, 2018, WOODS executed the scheme by knowingly causing to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, a wire transfer in the amount of approximately $869.78 for the payment of child care services purportedly provided by Kreative Kidz Academy III ("KKA-3") to Child R, from the State of Illinois' account at J.P. Morgan Chase to an account in the name of KKA-3 at Fifth Third Bank, in violation of Title 18, United States Code, Section 1343.

More specifically, in or about 2016, WOODS learned that McDowell (whom WOODS knew as "Lisa Dunn") operated a child care business. WOODS learned through McDowell and other sources that the State of Illinois made payments to day care businesses to subsidize day care expenses for working families who met certain

2

income thresholds or who attended school or training.

WOODS knew that, over the years, McDowell's business grew and she increased the number of her child care provider locations, which included A&A Kiddy Kollege (AAKK), Kreative Kidz Academy II (KKA-2), and KKA-3. McDowell hired individuals as "directors" to run the day-to-day operation of the child care centers, and WOODS was introduced to these directors through his association with McDowell, including co-schemers Lacey, Sims, and Jordan.

In approximately 2016, McDowell contacted WOODS by phone to request that WOODS manufacture and alter documents on her behalf. Beginning no later than April 2016, and continuing until at least September 2020, WOODS manufactured false, fabricated, and altered documents in exchange for money paid by McDowell, knowing that the documents would be used by McDowell and her employees to fraudulently qualify parents for day care benefits paid by the State of Illinois. At the direction of McDowell and her directors, WOODS fabricated and altered documents relating to the income and hours worked of McDowell's clients and employees. At the direction of McDowell and her co-schemers, WOODS knowingly fabricated and altered documents for clients of McDowell's child care centers in a manner that he understood would fraudulently make them appear to be eligible for child care subsidy

3

payments. In addition, WOODS fabricated and altered documents, such as early childhood education credentials, relating to the training and education of McDowell's employees. WOODS generally charged $40 per altered paycheck stub and $25 per altered credential requested by McDowell, Lacey, and her other directors.

WOODS communicated with McDowell and her directors by email, over the telephone, and in-person regarding their requests for fraudulent documents and payment for his services. WOODS fabricated the false and fraudulent documents on a computer at his home. WOODS communicated by email with his co-schemers using email accounts, including kennethbwoods@[redacted].com, kbwhomepc@[redacted].com, and thepaperclip671@[redacted].com. WOODS emailed false and fabricated documents to his co-schemers at email addresses such as aleesha123.ld@[redacted].com, nickay815@[redacted].com, stacy30cats1@[redacted].com, and kreativekidz3@[redacted].com.

The co-schemers emailed documents to WOODS accompanied by instructions to WOODS on how he should alter them. For example, on or about September 12, 2016, WOODS received an email from McDowell, which included an email McDowell had received from Lacey, attaching two pay stubs for Parent AM. In those emails, McDowell and Lacey instructed WOODS to fabricate substantially similar paystubs with a fewer number of hours worked in order to reduce Parent AM's net pay. WOODS understood that reducing the hours worked and lowering the net pay on the

fabricated pay stubs was intended to falsely document Parent AM's income as below the income threshold necessary to qualify for child care benefits.

WOODS manufactured the false and fraudulent pay stubs as directed by McDowell and Lacey, and transmitted them by email to McDowell on or about September 14, 2016. WOODS did so understanding that they would be used fraudulently by McDowell or one of her directors to cause IAC to approve Parent AM for receipt of child care benefits to which Parent AM was not entitled.

As another example, WOODS also manufactured false and fraudulent paystubs for Parent TM, a client of KKA-3, which materially underreported the net pay and number of hours worked by Parent TM. More specifically, on or about March 6, 2018, WOODS received an email from McDowell, which included an email McDowell had received from Jordan, attaching two pay stubs for Parent TM. In those emails, McDowell and Jordan instructed WOODS to fabricate substantially similar paystubs with a fewer number of hours worked in order to reduce Parent TM's net pay. WOODS understood that reducing the hours worked and lowering the net pay on the fabricated pay stubs was intended to falsely document that Parent TM's income was below the income threshold necessary to qualify for child care benefits.

WOODS manufactured the false and fraudulent pay stubs as directed by McDowell and Jordan, and transmitted them by email to McDowell on or about March 16, 2018. WOODS did so understanding that they would be used fraudulently by

McDowell or one of her directors to support an application to approve Parent TM for receipt of child care benefits to which Parent TM was not entitled.

WOODS acknowledges that, on or about March 30, 2018, documentation signed by Jordan was submitted by KKA-3 to IAC seeking reimbursement for services purportedly provided to Parent TM's child, Child R, during March 2018. WOODS acknowledges that, as a result of his participation in the scheme, on or about April 6, 2018, he knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, a wire transfer in the amount of approximately $869.78, from the State of Illinois, in payment for child care services purportedly provided by KKA-3 to Child R, from the State of Illinois' account at J.P. Morgan Chase to an account in the name of KKA-3 at Fifth Third Bank.

WOODS produced false, fabricated, and altered documents pertaining to the income, hours worked, and/or the training and education of dozens of clients and employees of McDowell's day care businesses. WOODS acknowledges that between approximately April 2016 and September 2020, through the submission of these fraudulent applications and as a result of reasonably foreseeable conduct that was within the scope of the criminal activity he agreed jointly to undertake with his co-schemers, McDowell, Lacey, Coley, Sims, Jordan, and others caused IDHS and the State of Illinois to pay McDowell's child care providers more than $550,000 in child

6

care subsidy payments for services purportedly provided to clients who were not eligible to receive such benefits.

7.      The foregoing facts are set forth solely to assist the Court in determining whether a factual basis exists for defendant's plea of guilty, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crimes and related conduct.

## Maximum Statutory Penalties

8.      Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a.      A maximum sentence of 20 years' imprisonment. This offense also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

b.      Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

c.      Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

9.      Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider

7

that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

10.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.     **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2021 Guidelines Manual.

b.     **Offense Level Calculations**.

i.     The base offense level is 7, pursuant to Guideline § 2B1.1(a)(1).

8

      ii.      Pursuant to Guideline § 2B1.1(b)(1)(H), the base offense level is increased by 14 levels because the loss was more than $550,000, but not more than $1,500,000.

      iii.      Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

      iv.      In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

      c.      **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts

now known to the government and stipulated below, defendant's criminal history points equal 1 and defendant's criminal history category is I:

       i.      On or about October 1, 2012, defendant was convicted of possession of a controlled substance in the Circuit Court of Cook County, Illinois, and sentenced to two years' probation. Pursuant to Guideline § 4A1.1(c), defendant receives 1 criminal history point for this sentence.

       d.      **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 18 which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 27 to 33 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

       e.      Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation

officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

   f.  Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Cooperation

   11.  Defendant agrees he will fully and truthfully cooperate in any matter in which he is called upon to cooperate by a representative of the United States Attorney's Office for the Northern District of Illinois. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil, or administrative proceeding. Defendant agrees to the postponement of his sentencing until after the conclusion of his cooperation.

**Agreements Relating to Sentencing**

12.     At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this agreement, then the government shall move the court, pursuant to Guideline § 5Kl.l, to depart downward from the low end of the applicable guideline range in an amount to be determined <u>by the government</u> at the time of sentencing. Defendant shall be free to recommend any sentence.

13.     If the government does not move the Court, pursuant to Guideline § 5K1.1, to depart from the applicable guideline range, as set forth above, the preceding paragraph of this Agreement will be inoperative, both parties shall be free to recommend any sentence, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines without any downward departure for cooperation pursuant to § 5K1.1. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Guideline § 5K1.1.

14.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

15.    Regarding restitution, defendant acknowledges that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant, together with any jointly liable co-defendants, to make full restitution in an amount to be determined by the Court at sentencing, which amount shall reflect credit for any funds repaid prior to sentencing.

16.    Defendant also agrees to pay restitution arising from the Paycheck Protection Program loan he caused to be obtained fraudulently in his name in the amount of $24,500, pursuant to Title 18, United States Code, Sections 3663(a)(3) and 3664.

17.    Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

18.    Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

19.    Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

13

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

20.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 23 CR 4.

21.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

22.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

      a.     **Right to be charged by indictment**. Defendant understands that he has a right to have the charge prosecuted by an indictment returned by a concurrence of twelve or more members of a grand jury consisting of not less than sixteen and not more than twenty-three members. By signing this Agreement, defendant knowingly waives his right to be prosecuted by indictment and to assert at

14

trial or on appeal any defects or errors arising from the information, the information process, or the fact that he has been prosecuted by way of information.

           b.     **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charge against him, and if he does, he would have the right to a public and speedy trial.

           i.     The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

           ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

           iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

15

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.     At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

c.     **Waiver of appellate and collateral rights**. Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, if the

16

government makes a motion at sentencing for a downward departure pursuant to Guideline § 5K1.1, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution, in exchange for the concessions made by the United States in this Agreement. In addition, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

23.     Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

24.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at

sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charge against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing, including the nature and extent of defendant's cooperation.

25.    Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the Court.

26.    For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's

sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

27.    Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

28.    Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

29.    Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

30.    Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter

19

prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

31.     Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

32.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

33.     Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he

understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: ___June 28, 2023___

MICHELLE PETERSEN    Digitally signed by MICHELLE PETERSEN    by MP
                     Date: 2023.06.11 20:56:55 -05'00'
_____
MORRIS PASQUAL
Acting United States Attorney

_____
KENNETH WOODS
Defendant

_____
BRIAN HAYES
Assistant U.S. Attorney

_____
JOSHUA B. ADAMS
Attorney for Defendant

21